UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA DINAPOLI, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., *Secretary of U.S. Department of Health and Human Services*, *et al.*,<br><br>*Defendants*. | Civil Action No. 23-01799 (AHA) |

**Memorandum Opinion**

Congress has struck a balance between ensuring access to countermeasures during public health emergencies and providing remedies to people injured by those countermeasures. It has authorized the Secretary of Health and Human Services to grant legal immunity to those who help develop and administer medical countermeasures to public health emergencies and to create an administrative claims process that provides relief to people injured by the countermeasures.

The plaintiffs here have relatives who used countermeasures and died during the COVID-19 public health emergency. Before suing, they filed administrative claims with the Secretary for death benefits. The plaintiffs argue their claims have been or will be denied because the Secretary has adopted a policy of denying relief unless claimants can show that a countermeasure was the "singular cause" of death. They assert claims under the Administrative Procedure Act ("APA"), arguing that this policy is unlawful and must be set aside. The government moves to dismiss, arguing that Congress has precluded judicial review of the plaintiffs' challenge and, in the alternative, that the plaintiffs have not plausibly alleged a final agency action that can give rise to an APA claim. The court grants the motion to dismiss, concluding that judicial review is available,

but the amended complaint does not plausibly allege the Secretary actually adopted the "singular cause" policy the plaintiffs complain of in this suit.

I.     Background[1]

    A.  **Statutory and Regulatory Background**

In 2005, Congress passed the Public Readiness and Emergency Preparedness ("PREP") Act, Pub. L. No. 109-148, 119 Stat. 2818 (2005) (codified at 42 U.S.C. §§ 247d-6d, 247d-6e), to "encourage expeditious development and deployment of medical countermeasures during a public health emergency." Kevin J. Hickey & Erin H. Ward, Cong. Rsch. Serv., LSB10584, Compensation Programs for Potential COVID-19 Vaccine Injuries 2 (2021). The act provides that manufacturers, distributors, and those involved in the planning and administration of medical countermeasures are immune from liability when the Secretary of Health and Human Services declares that a health threat poses a public health emergency. 42 U.S.C. § 247d-6d(a)–(b), (i)(2); *see id.* § 247d-6d(a)(1) (stating that upon the Secretary's declaration, covered persons become immune from "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure").

The act also provides that, after declaring a public health emergency, the Secretary shall "provide compensation to an eligible individual for a covered injury directly caused by the administration or use of a covered countermeasure." *Id.* § 247d-6e(b)(1). And the Secretary's determination "as to the direct causation of a covered injury" must be "based on compelling, reliable, valid, medical and scientific evidence." *Id.* § 247d-6e(b)(4).

---

[1] As required at this stage, the court accepts the amended complaint's well-pled allegations as true and draws all reasonable inferences in the plaintiffs' favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

The Secretary has exercised this statutory authority by creating the Countermeasures Injury Compensation Program ("CICP"). The CICP, administered by a component of the Department of Health and Human Services called the Health Resources & Services Administration, allows an individual who suffered a serious injury directly caused by a covered countermeasure, or the survivor of a decedent whose death was directly caused by a covered countermeasure, to file a claim for compensation. 42 C.F.R. §§ 110.10, 110.30, 110.33. The requester must submit a package with the documentation necessary to determine eligibility, such as medical records and, for a death benefits claim, the death certificate and documentation showing the requester is an eligible survivor. *Id.* §§ 110.41, 110.50–110.52. The Secretary or his delegee then determines the requester's eligibility for compensation and the type and amount of benefits to be paid. *Id.* §§ 110.3(y), 110.70, 110.74, 110.82. In the case of a claim for death benefits, the critical determination is whether the decedent "sustained a covered injury and died as a direct result of the injury or its health complications." *Id*. § 110.33(a); *see also id*. § 110.3(g)(2) (defining "covered injury" as "[a]n injury (or its health complications) that is the direct result of the administration or use of a covered countermeasure"). If a claim is denied, the requester may seek reconsideration by an independent panel. *Id.* § 110.90. An associate administrator at the agency then reviews the panel's recommendations and makes a determination that "will be considered the Secretary's final determination on the request for Program benefits with regard to the injury." *Id.* § 110.90(c).

### B. The Secretary's COVID-19 Declaration

In early 2020, the Secretary declared COVID-19 a public health emergency. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15201 (Mar. 17, 2020). The Secretary defined covered countermeasures to include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19," as well as

"any device used in the administration of any such product, and all components and constituent materials of any such product." *Id.* at 15202. In addition to triggering liability immunity for persons involved in the development and administration of these countermeasures, the declaration allowed people who are injured as the direct result of using countermeasures to file CICP claims. *Id*. at 15201–03; *see* 42 C.F.R. § 110.20(a) (providing that in order to establish eligibility under the CICP, a requester must show that a covered injury "was sustained as the direct result of the administration or use of a covered countermeasure pursuant to the terms of a declaration").

### C. The Plaintiffs' CICP Claims And Suit

The plaintiffs are 217 people with relatives who used covered countermeasures during the COVID-19 public health emergency—including hydroxychloroquine, azithromycin, remdesivir, and mechanical ventilators—and died. ECF No. 28 ¶ 1. According to the amended complaint, the plaintiffs filed CICP claims following the deaths of their relatives, accompanied by the required documentation and expert analysis showing a causal relationship between the decedents' deaths and the countermeasures used. *Id.* ¶¶ 55–61. The Secretary denied 24 of the plaintiffs' claims and, after this suit was filed, the parties agreed to pause any further determinations of the plaintiffs' claims pending resolution of this case. *Id.* ¶ 3 & n.2.

The amended complaint asserts claims against the Secretary, other government personnel, and offices related to the administration of the CICP under the APA, alleging that they have adopted an unlawful policy to deny death benefits unless a requester shows that a covered countermeasure was the "singular cause" of death. *Id.* ¶¶ 4–7, 98–111, 131–54. According to the plaintiffs, this policy—whereby the covered countermeasure must be the *only* factor contributing to the decedent's death to establish eligibility for death benefits, and their CICP claim will be denied if *any* other factor (such as the decedent having COVID-19) contributed to the decedent's death, *id.* ¶ 111—is inconsistent with the PREP Act, which requires only that injury be "directly

4

caused by the administration or use of a covered countermeasure," 42 U.S.C. § 247d-6e(b)(1), and the Department's regulations, which require that death be "a direct result of the injury or its health complications," 42 C.F.R. § 110.33(a). *See* ECF No. 28 at 131–54. The plaintiffs accordingly contend the policy is agency action that is arbitrary, capricious, and "not in accordance with law" and that must be set aside. 5 U.S.C. § 706(2)(A); *see* ECF No. 28 at 32.

The government moves to dismiss the complaint for lack of jurisdiction and failure to state a claim. ECF No. 29-1.

**II.    Discussion**

The government argues for dismissal on two grounds. First, it argues the plaintiffs lack a cause of action under the APA because "statutes preclude judicial review" of their claim. 5 U.S.C. § 701(a)(1); *see* ECF No. 29-1 at 16–21. If that is so, this court lacks jurisdiction and dismissal is required under Federal Rule of Civil Procedure 12(b)(1). *See Abuzeid v. Mayorkas*, 62 F.4th 578, 583 (D.C. Cir. 2023) ("District courts have federal-question jurisdiction over APA cases unless such review is precluded by a separate statute."). Second, they argue the plaintiffs do not plausibly allege final agency action under 5 U.S.C. § 704. *See* ECF No. 29-1 at 21–30. If that is so, the plaintiffs fail to state a claim and dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6). *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003). For both, the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)) (addressing dismissal for lack of subject-matter jurisdiction); *see Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (addressing dismissal for failure to state a claim).

With these standards in mind, the court addresses each argument in turn.

5

**A. The PREP Act Does Not Preclude Judicial Review Of The Plaintiffs' Challenge**

The APA does not offer a cause of action if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). In conducting that analysis, the court must begin with a "strong presumption that Congress intends judicial review of administrative action" which "can only be overcome by a 'clear and convincing evidence' that Congress intended to preclude the suit." *Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004) (quoting *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986); *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 141 (1967)). "This presumption applies even where, as here, the statute expressly prohibits judicial review—in other words, the presumption dictates that such provisions must be read narrowly." *El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011); *see also Block*, 467 U.S. at 351 (explaining that "where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling").

The government argues that the PREP Act precludes the plaintiffs' APA claims. ECF No. 29-1 at 17–21. According to the government, the PREP Act bars judicial review of the plaintiffs' claims by incorporating certain provisions of the Smallpox Emergency Personnel Protection Act of 2003 ("SEPPA"), Pub L. No. 108-20, 117 Stat. 638 (2003) (codified at 42 U.S.C. §§ 239–239h). In particular, when setting forth the Secretary's authority to compensate people injured by countermeasures, the PREP Act states the Secretary shall use "the procedures for determining, and for reviewing a determination of, whether an individual is an eligible individual, whether such individual has sustained a covered injury, whether compensation may be available under this section, and the amount of such compensation" set forth in SEPPA. 42 U.S.C. § 247d-6e(b)(4).

The government observes that SEPPA's review provisions state that "[n]o court of the United States, or of any State, District, territory or possession thereof, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this section." 42 U.S.C. § 239a(f)(2). The government argues that the PREP Act therefore precludes any challenge to the Secretary's determinations denying death benefits to the plaintiffs and forecloses any challenge to whether the Secretary's broader policies, such as a "singular cause" requirement, violate the law.

The government's argument is well taken in the first respect. The PREP Act clearly adopts SEPPA's procedures "for reviewing a determination of" a person's benefits eligibility, 42 U.S.C. § 247d-6e(b)(4), and an eligibility determination would be covered by SEPPA's broad preclusion of judicial review for "any action by the Secretary," 42 U.S.C. § 239a(f)(2). As the plaintiffs concede, the PREP Act accordingly would preclude them from seeking review of the Secretary's eligibility and compensation determinations. *See* ECF No. 28 ¶ 13; ECF No. 30 at 15.

But the PREP Act does not preclude review of the Secretary's policies and procedures, independent from eligibility and compensation determinations. The government argues that it does because SEPPA's broad preclusion language encompasses challenges to such policies or procedures, by foreclosing judicial review of "any action by the Secretary." 42 U.S.C. § 239a(f)(2). But even accepting that, the PREP Act explicitly incorporates SEPPA's procedures "for reviewing a determination of" benefits eligibility, but not for reviewing the procedures used to determine eligibility. 42 U.S.C. § 247d-6e(b)(4). Language "incorporating one statute or system of statutes into another . . . serves to bring into the latter all that is fairly covered by the reference." *Panama R. Co. v. Johnson*, 264 U.S. 375, 392 (1924). Here, the PREP Act's language incorporates

7

SEPPA's review procedures only as to review of eligibility and compensation "determinations." 42 U.S.C. § 247d-6e(b)(4).

The government appears to acknowledge that this language does not encompass challenges to the Secretary's more general policies and procedures for determining eligibility, but argues that Congress may have intended otherwise because it incorporated both SEPPA's "procedures for determining" eligibility *and* its procedures "for reviewing a determination of" eligibility. 42 U.S.C. § 247d-6e(b)(4); *see* ECF No. 32 at 2–3. According to the government, because Congress mentioned these two things "closely together" or "in a single breath," it likely viewed them as "connected and interrelated" and meant to incorporate SEPPA's review provisions for reviews of "determinations" and for reviews of "procedures for determining eligibility." ECF No. 32 at 3. But the best indication of Congress's intent is what it said. *See Sierra Club v. EPA*, 294 F.3d 155, 161 (D.C. Cir. 2002). Here, Congress incorporated SEPPA's "procedures for determining" eligibility, without mentioning SEPPA's procedures for review of such procedures, and incorporated SEPPA's provisions governing review only for reviews of "determinations" themselves. 42 U.S.C. § 247d-6e(b)(4). The government's attempt to stretch the latter beyond its terms runs directly counter to the rule that such provisions "be read narrowly." *El Paso Nat. Gas Co.*, 632 F.3d at 1276.

This reading is reinforced by the PREP Act's explicit bar on judicial review in connection with the Secretary's injury tables. The PREP Act contains an explicit provision barring judicial review of an injury table the Secretary may create to designate injuries that are presumed to be directly caused by covered countermeasures. *See* 42 U.S.C. § 247d-6e(b)(5)(A), (C). That provision, which by its terms bars judicial review only as it relates to the "paragraph" concerning injury tables, would be superfluous had Congress incorporated a bar on review of all procedures

8

related to eligibility determinations, as the government argues. *Id.* § 247d-6e(b)(5)(C); *see El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 888 (D.C. Cir. 2014) (holding that the fact that Congress "did explicitly bar review as to *some* [agency] action under" the statute at issue "implies that it did *not* intend judicial review to be foreclosed as to other [agency] actions"). The government's interpretation therefore runs afoul of the general rule that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

This reading is also supported by the Department's own regulations. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (explaining that, in exercising independent judgment to determine the meaning of statutory provisions, "courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes"). The Department's regulations interpreting the statutory provision incorporating SEPPA's procedures limit the bar on judicial review to "the Secretary's actions concerning eligibility and benefits determinations," which includes "determinations concerning eligibility, the type or amount of benefits, and the method of payment of benefits." 42 C.F.R. § 110.92(a). The Department's own regulations interpreting the statute therefore include a bar on judicial review of benefits and eligibility determinations but do not contain a bar on judicial review of the procedures and policies for determining eligibility.

Thus, while the PREP Act precludes judicial review of eligibility determinations, it does not preclude judicial review of the policies and procedures to determine eligibility. And the PREP Act certainly does not contain language overcoming the "strong presumption that Congress intends judicial review of administrative action" by "clear and convincing evidence." *Amgen*, 357 F.3d at

9

111; *see also Bowen*, 476 U.S. at 675 (1986) (holding that statutory scheme limiting judicial review of determinations of amounts of Medicare benefits "simply does not speak to challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves"); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991) (holding that a statutory preclusion of judicial review of determinations respecting an application for adjustment of immigration status did not bar "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications"). The court accordingly considers whether the plaintiffs have stated an APA claim as it relates to an agency policy independent of their individual eligibility determinations.

### B. The Plaintiffs Have Not Plausibly Alleged The Agency Has Adopted A Policy To Deny Claims Unless Countermeasures Are The "Singular Cause" Of Death

The plaintiffs ask this court to "hold unlawful and set aside agency action" that is arbitrary, capricious, or "not in accordance with law." 5 U.S.C. § 706(2)(A). It is well established that APA review is limited to "final agency action." *Id*. § 704; *see Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) ("While the requirement of finality is not jurisdictional, without final agency action, 'there is no doubt that [the plaintiffs] would lack a cause of action under the APA.'" (quoting *Reliable Automatic Sprinkler Co.*, 324 F.3d at 731)). "Agency actions are final if two independent conditions are met: (1) the action marks the consummation of the agency's decisionmaking process and is not of a merely tentative or interlocutory nature; and (2) it is an action by which rights or obligations have been determined, or from which legal consequences will flow." *Soundboard Ass'n*, 888 F.3d at 1267 (cleaned up).

Here, the plaintiffs assert the Secretary has adopted an unlawful interpretation of the PREP Act and the Department's own regulations. ECF No. 28 ¶¶ 131–54. The PREP Act authorizes the Secretary to compensate injuries "directly caused by" covered countermeasures. 42 U.S.C. § 247d-

10

6e(b)(1). As it relates to death benefits, the Department's implementing regulations, in turn, ask whether the decedent "sustained a covered injury and died as a direct result of the injury or its health complications." 42 C.F.R. § 110.33(a); *see also id*. § 110.3(g)(2) (defining "covered injury" as "[a]n injury (or its health complications) that is the direct result of the administration or use of a covered countermeasure," which "includes serious aggravation caused by a covered countermeasure of a pre-existing condition"). The regulations also describe the purpose of the CICP to include the provision of death benefits to certain survivors where the decedent "died as a direct result of a covered injury." *Id*. § 110.1. The plaintiffs do not dispute the Secretary's authority to determine whether injuries were "directly caused" by countermeasures, or the legality of Department regulations implementing the procedures and standards for making that determination. They argue that, in making those determinations, the Secretary has "applied a causation standard that directly conflicts" with the statute and regulations. ECF No. 28 ¶ 136. In particular, the plaintiffs assert the Secretary has adopted a "singular cause" policy, under which "the covered countermeasure must be the ONLY factor contributing toward the death." *Id.* ¶¶ 4, 111.

As an initial matter, the parties appear to dispute whether, if plausibly alleged, the adoption of such a policy could constitute "agency action" subject to APA review. *See* ECF No. 29-1 at 26–30; ECF No. 30 at 18–19. It could. The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). And it further defines "rule" as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4). Agency action thus includes an agency's interpretation of the law, which is what the plaintiffs' claim purports to challenge here. *See Nat'l Automatic Laundry & Cleaning*

11

*Council v. Shultz*, 443 F.2d 689, 698 (D.C. Cir. 1971). So, if the Secretary has adopted a final interpretation of the relevant statute or regulations, it would be subject to review.

The problem for the plaintiffs is that they have not plausibly alleged finality—even taking all of the factual allegations in the amended complaint as true, they do not show the Secretary has actually adopted the "singular cause" requirement that the plaintiffs want to challenge in this case, let alone that any such requirement marks the "consummation of the agency's decisionmaking process." *Soundboard Ass'n*, 888 F.3d at 1267. The plaintiffs do not allege that any document or other directive exists adopting a "singular cause" requirement. They instead ask the court to infer that the Secretary is applying this rule based on (i) the Secretary's denial of all death benefit claims, to date, using form denial letters finding that the death or injury was not directly caused by the relevant countermeasure; and (ii) Department memos and templates directing initial case reviewers to consider whether injuries resulted from an "alternate cause" or a "factor unrelated" to the covered countermeasure and to deny death benefits in certain circumstances where the cause was "multifactorial." ECF No. 30 at 20. But these do not plausibly show the Secretary has adopted a "singular cause" standard.

First, neither the fact that the plaintiffs' claims were denied, nor the denial letters used support adoption of a singular cause requirement. The plaintiffs argue otherwise because the denial letters state that the claimants failed to demonstrate that serious injury or death occurred as "the direct result" of a covered countermeasure. ECF No. 28 ¶¶ 5, 100; ECF No. 30 at 7, 10. The relevant language from the denial letters reads:

> An injury sustained as the direct result of the covered condition (COVID-19 viral infection) for which the countermeasure was administered or used, and not as the direct result of the administration or use of the covered countermeasure, is not a covered injury (e.g., if the covered countermeasure is ineffective in treating or preventing the underlying condition or disease). 42 C.F.R. § 110.20(d). Therefore, if an injury or death was caused by a disease, and not as a direct result of the

12

administration or use of a covered countermeasure, it cannot qualify as a covered injury.

ECF No. 1 ¶ 117 (emphasis omitted).[2] The plaintiffs' argument is unpersuasive. While the plaintiffs read much into the letters' reference to whether injury was "the" direct result of a countermeasure rather than "a" direct result of a countermeasure, the distinction does not indicate the agency is requiring a singular cause. To begin with, the plaintiffs' argument conflicts with plain English. If someone goes outside and gets sunburned, one can reasonably say it was the direct result of being in the sun, the direct result of not covering up, and the direct result of not wearing sunscreen. Using "the" does not indicate there had to be only one cause. Indeed, the Department's regulations themselves—which the plaintiffs do not challenge and, indeed, rely on—use "the direct result" and "a direct result" interchangeably. *See, e.g.*, 42 C.F.R. § 110.2(a)(3) (stating that death benefits are available to certain survivors if the decedent's death was "the direct result of a covered injury"); *id.* § 110.11(a) (stating that if the decedent died "as the direct result of a covered injury" their survivors may be eligible for death benefits); *id.* § 110.20(c) (stating that for injuries not included in an injury table, the requester must demonstrate that the injury occurred "as the direct result of" a covered countermeasure). The denial letter itself does the same, stating in one sentence that denial is appropriate where injury was not "the direct result of the administration or use of the covered countermeasure," and in the next sentence that denial is appropriate where injury is not "a

---

[2] The plaintiffs included this full passage in their initial complaint but removed it in the amended complaint. Given the amended complaint's continued reliance on the denial letters, the court considers the full language. *See* ECF No. 28 ¶¶ 3, 5–6, 93, 96, 100, 110, 137; *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim," the court may consider "any documents either attached to or incorporated in the complaint."); *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (explaining that on a Rule 12(b)(6) motion "it is appropriate for the court to look beyond the amended complaint to the record, which includes the original complaint").

direct result of the administration or use of a covered countermeasure." And, assuming that determination is correct—the injury was not the (or a) direct result of using a covered countermeasure—there is no question it would be a sound basis for denying relief under the statute and regulations. *See* 42 U.S.C. § 247d-6e(b)(1) (stating that the Secretary shall "provide compensation to an eligible individual for a covered injury directly caused by the administration or use of a covered countermeasure"); 42 C.F.R. § 110.33(a) (stating that eligible survivors may be able to receive a death benefit where the decedent "sustained a covered injury and died as a direct result of the injury or its health complications"); *see also* 42 C.F.R. § 110.3(g)(2) (defining "covered injury" as "[a]n injury (or its health complications) that is the direct result of the administration or use of a covered countermeasure"). Saying so does not indicate the agency is demanding a singular cause.

Second, and similarly, none of the internal memos or templates referred to in the amended complaint plausibly show that the Secretary has adopted a singular cause policy. The amended complaint references a memo instructing case reviewers to consider numerous questions, including whether "there is a compelling, reliable, valid medical and scientific evidence to support a 'factor unrelated' or a more likely alternate cause to the injury, rather than relevant countermeasure(s), when appropriate." ECF No. 17-1; ECF No. 28 ¶ 4, 101.[3] But asking case reviewers to consider whether injury was caused by a "factor unrelated" to a countermeasure or other "more likely" causes, alongside numerous other considerations that are reported to the Secretary before his determination, does not indicate the Secretary has a policy of denying relief unless the relevant countermeasure is the sole cause. Rather, these inquiries would be germane to anyone assessing

---

[3] The court considers the relevant memos referenced by and incorporated in the amended complaint, which have been entered on the docket. *See* ECF No. 28 ¶¶ 4, 101–02, 106–07, 118; ECF Nos. 17-1, 32-1.

14

whether injury was "directly caused by the administration or use of a covered countermeasure," as the Secretary is statutorily required to do. *See* 42 U.S.C. § 247d-6e(b)(1). As the case review memo states—inconsistent with the plaintiffs' characterization—these inquiries entail consideration of "the likelihood of countermeasure causation (or significant aggravation)" based on medical and scientific evidence. ECF No. 17-1 at 2.

The amended complaint also references a guidance memo that gives various templates and the following reason for denial: "Cases where not exactly clear the cause but clear the cause of death was not a countermeasure (possibly multifactorial – prior disease, infection, etc. or possible massive PE but no CT, etc.)." ECF No. 32-1 at 4; *see* ECF No. 28 ¶¶ 106–07. The plaintiffs isolate the word "multifactorial," and argue that this word means the Secretary will deny a claim if there is more than one cause. ECF No. 28 ¶ 107; ECF No. 30 at 9. But the full sentence indicates it is discussing the denial of claims where it is "clear the cause of death was not a countermeasure"— again, a circumstance where there is no doubt denial would be appropriate. *See* 42 U.S.C. § 247d-6e(b)(1) (stating that the Secretary shall "provide compensation to an eligible individual for a covered injury directly caused by the administration or use of a covered countermeasure"). The memo's acknowledgement that a situation in which "the cause of death was not a countermeasure" may nonetheless be "possibly multifactorial" does not indicate that the Secretary has adopted a policy of denying claims where a countermeasure was a direct cause of injury. ECF No. 32-1 at 4. Indeed, the guidance memo repeatedly directs that the ultimate inquiry is whether a countermeasure "directly caused" or "when applicable, seriously aggravated" injury. ECF No. 32-1 at 2–3. The amended complaint accordingly fails to plausibly allege the Secretary has adopted the singular cause standard that the plaintiffs wish to challenge in this case.

Several aspects of the plaintiffs' amended complaint sound in more general frustration with the Secretary's administration of the claims process. The plaintiffs complain that the Secretary has denied the vast majority of COVID-19 claims and that the small number of claims granted to date have all involved vaccine countermeasures. ECF No. 28 ¶¶ 53–54. Similarly, the plaintiffs assert that Department documents contain numerous examples of template denial language but only include approval language for vaccine claims. *Id.* ¶¶ 104–05. The plaintiffs also complain of the program's efficiency, alleging that almost all of the funds allocated for the CICP program have been used for administrative expenses rather than actual compensation to requesters. *Id.* ¶¶ 15, 82–87. And they allege members of Congress have expressed similar concerns, including sending correspondence to the Secretary about the lack of proper administration of the CICP. *Id.* ¶¶ 123–28. However, while these allegations, accepted as true, give reason to question the program's efficiency—including that the Secretary may be applying a stringent standard in making determinations—they do not plausibly allege the Secretary has adopted a "singular cause" policy. Indeed, the letter from members of Congress does not say anything about a "singular cause" policy, and, to the contrary, asks what criteria are being used in applying the "direct result" standard. *See id.* ¶¶ 124–26; ECF No. 1-1.

The court accordingly concludes the amended complaint fails to allege final agency action adopting a singular cause policy.

### III. Conclusion

For these reasons, the government's motion to dismiss is granted and this action is dismissed without prejudice. A separate order accompanies this memorandum opinion.

                                                        _____

AMIR H. ALI
United States District Judge

Date:   February 10, 2026